JOHNSON, Respondent, v. CHILTON, Appellant.

St. Louis Court of Appeals, February 21, 1905.

1. **LACHES: Fraud.** Where the maker of a note settled it in full with the endorsee, but concealed the fact from the endorser and suit was afterwards brought by the endorsee under an agreement with the maker that the endorser only should be held for an apparent balance due, the endorser, being in ignorance of the fact that the note was settled, was not guilty of laches in failing to make a timely defense to the action.

2. ———: ———: **Setting Aside Judgment.** The concealing of the fact of payment from the court and from the endorser was a fraud upon the court, and the endorser and the judgment obtained against the endorser in the action was properly set aside in action brought for that purpose by the endorser.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside,* Judge.

AFFIRMED.

*Orr & Luster* for appellant.

(1) The payment of a part of an ascertained debt is not a bar to an action for the balance though it was accepted in full of such debt, and a receipt in full given. Price v. Cannon, 3 Mo. 453; Riley et al. v. Kershaw, 52 Mo. 224; Young v. Schofield, 132 Mo. 670, 34 S. W. 497. (2) The fraud for which judgment will be vacated by a court of equity in a direct proceeding, must be fraud in the act of obtaining such judgment; it does not have reference to any false or fraudulent evidence upon which such judgment may have been rendered and must be unmixed with negligence or laches of the party against whom such judgment was rendered. Payne v. O'Shea, 84 Mo. 129; Murphy v. DeFrance, 101 Mo. 151, 13 S. W. 756; Irvine v. Leyh, 102 Mo. 200, 14 S. W. 715,

16 S. W. 10; Hamilton v. McLean, 139 Mo. 678, 41 S. W. 224; Freeman on Judgments, sec. 489 (3 Ed.); Pelz v. Bollinger, 79 S. W. R. 146; Railroad v. Mirrielees, 81 S. W. 437. (3) A judgment will not be vacated for facts which existed at the time of its rendition merely because the defendant was ignorant of them. It must appear that his ignorance was not due to any lack of diligence on his part, or that his ignorance of such facts was positively caused by the acts of the opposite party. Carolus v. Koch, 72 Mo. 645; Story's Equity, secs. 895 and 1572. (4) There must have been no negligence on the part of the defendant in a trial at law, who seeks relief in a court of equity. Hotel Association v. Parker, 58 Mo. 327; Field and Cathcart v. Matson, 8 Mo. 686; Matson v. Field and Cathcart, 10 Mo. 100; Reed's Adm'rs v. Hansard, 37 Mo. 199; Renfroe v. Renfroe, 54 Mo. App. 429. (5) It sometimes happens that a judgment is rendered against a litigant which is clearly inequitable and unconscionable. Accident, mistake, fraud, or other wrongful conduct of his adversary may have contributed to this result, and the circumstances may be such that he cannot obtain relief except in equity, and his equities may be of so persuasive a character that the court would be anxious to give him redress, had he been diligent on his part, but if he has allowed himself to be put in an unfortunate position through his negligence or inattention with respect to any of his duties to which we have referred, equity will not interpose in his behalf. Payton v. McQuown, 97 Ky. 757; Waldron v. Waldron, 76 Ala. 285; Tillis v. Prestwood, 107 Ala. 618; Champion v. Woods, 79 Cala. 17, 12 Am. St. Rep. 186; Stroup v. Sullivan, 2 Ga. 275, 46 Am. Dec. 389; Bellamy v. Woodson, 4 Ga. 145, 4 Am. Dec. 221; Ames v. Snider, 55 Ill. 498; Railway v. Holbrook, 92 Ill. 297; Radcliffe v. Stretch, 130 Ind. 282; English v. Aldrich, 132 Ind. 500; Hollinger v. Reeme, 138 Ind. 363, 46 Am. St. Rep. 402; Landrum v. Farmer, 7 Bush 46; Casey v. Gregory, 13 B. Mon. 505; Amherst

College v. Allen, 165 Mass. 178; Kelleher v. Boden, 55 Mich. 295; Jordon v. Thomas, 34 Miss. 72, 69 Am. Dec. 378; Ross v. Holloway, 60 Miss. 553; Crim v. Handley, 94 U. S. 652; Hoey v. Jackson, 31 Fla. 541; Slappy v. Hodge, 99 Ala. 300. (6) Or to some misapprehension as to the employment of counsel, as where an attorney has been written or spoken to about attending to the case, but no effort had been made to ascertain whether he was doing so or not, and he had not been given such information as to the facts as would have enabled him to give the case proper attention. Griffith v. Thompson, 4 Gratt. 147; Hill v. Bowyer, 18 Gratt. 364; Cabal v. Roberts, 6 Rand. 580; Shields v. McClung, 6 W. Va. 79; Barnhorst v. Armstrong, 42 Fed. Rep. 2.

*James Orchard* for respondent.

(1) There is no question from the evidence but that the note in question was fully paid off by the maker, A. J. McKinney, and the maker released. Where the maker is released by the indorsee that releases the indorser. 2 Am. and Eng. Ency. Law, p. 387, see note 1; Bank v. Schmucker, 7 Mo. App. 171; Eggman v. Henschen, 56 Mo. 123. (2) In case of fraud in procuring a judgment the judgment is declared void for the reason and upon the theory that the fraud entering into it, as in any other transaction of life, vitiates its integrity, destroys its validity because the apparent is not what it appears, because the pretended is not a reality. State ex rel. v. Fleming, 158 Mo. 558, 59 S. W. 118; Baldwin v. Dalton, 168 Mo. 20, 67 S. W. 599; Baldwin v. Davidson, 139 Mo. 118, 40 S. W. 765. (3) A judgment, whether foreign or domestic, may be set aside in equity for fraud. Payne v. O'Shea, 84 Mo. 129.

### STATEMENT.

The petition on which the case was tried is as follows (omitting caption):

"Now comes plaintiff and for amended petition states that on or about the twelfth day of December, 1900, he sold to one A. J. McKinney a half interest in a drugstore, located at Birch Tree, Shannon county, Missouri; that in part payment for said drugstore the said A. J. McKinney made, executed and delivered his promissory note, dated December 12, 1900, by which he promised to pay to the plaintiff, or order for value received, one year after date, three hundred and sixty-one dollars and twelve cents ($361.12) with interest at eight per cent per annum from April 1, 1901; that subsequent to said sale and the making and delivery of said note to the plaintiff, the defendant herein presented a lot of accounts from various houses due and owing by this plaintiff; that in payment and satisfaction of said accounts this plaintiff assigned and transferred the note before described to the defendant herein, J. W. Chilton, which was to be in full satisfaction of said accounts; that after the maturity of said note the said A. J. McKinney, the maker thereof, paid off and discharged said note in full, to the defendant, J. W. Chilton, but in order to cheat and defraud this plaintiff and to fraudulently obtain a judgment against him, they agreed to only credit said note with $200, and by a false and fraudulent agreement the said Chilton was to bring an action in the circuit court of Shannon county, Missouri, against the said A. J. McKinney and this plaintiff demanding judgment for the balance claimed to be due on said note, and only allow a credit of $200, which he did do on the sixth day of February, 1902, returnable to the March term, 1902, circuit court Shannon county, Missouri; that after summons was served on this plaintiff and on said McKinney, the said McKinney agreed with this plaintiff that he would make such defense to said note as was necessary and would pay off and discharge the balance purporting to be due on said note and hold this plaintiff harmless for the balance due on said note; that all of the fraudulent acts and conspiracy between

said defendant and J. W. Chilton and said McKinney was unknown to this plaintiff; that at the March term, 1902, of said circuit court, the said Chilton, in furtherance of the conspiracy and fraudulent agreement, made and entered into between himself and the said McKinney, took judgment against this plaintiff for the sum of $188.66 for debt and $14.70 costs, together with interest thereon at the rate of eight per cent per annum.

"Plaintiff states that he did not appear and make defense to said suit for the reason of the statement and representation made to him by the said A. J. McKinney that he would look after said suit and hold this plaintiff harmless; that he relied wholly and solely on said McKinney to protect him in the matter, wherefore plaintiff says that said judgment was obtained against him through combination, conspiracy and fraud of the said A. J. McKinney and this defendant, J. W. Chilton; that the whole of said debt had been fully paid off and discharged before the institution of the said suit, all of which was unknown to this plaintiff.

"Plaintiff states that he has a good and meritorious defense to said action, if permitted to make defense thereon; wherefore plaintiff prays the court to set aside said judgment and it be for naught held, and for such other and further relief as in equity and justice he may be entitled to."

The answer admitted the rendition of the judgment, in the Shannon Circuit Court, against the plaintiff and in favor of defendant herein, as alleged in the petition, and denied all other allegations therein contained.

The evidence is that plaintiff sold A. J. McKinney a drugstore in the town of Birch Tree, Missouri, and in part payment took McKinney's note for the sum of $361.12, due twelve months after date. Plaintiff's evidence is that he owed some bills for merchandise which were in the hands of defendant (an attorney at law) for collection; that he was unable to meet these bills with the cash and in settlement thereof assigned the McKin-

ney note to defendant. The evidence shows that after defendant got possession of the note, McKinney in payment or part payment thereof, made a deed to an undivided one-half interest in a tract of land in Texas county to defendant's father, at the direction of defendant. The actual consideration for this conveyance is in dispute between McKinney and defendant. The consideration stated in the deed is two hundred dollars, and a credit of two hundred dollars was indorsed on the note at the date of the execution of the deed. But at the same time, defendant gave McKinney the following receipt against the note:

"Winona, Mo., January 23, 1902.

"Received of Andrew J. McKinney two hundred dollars in satisfaction of a certain note, which I hold against him, as follows: Note, $361.12, dated Dec. 12, 1900, due 12 months from date, signed A. J. McKinney and indorsed to J. M. Johnson, and by Johnson to me. There is no dispute as to the amount of the note or the debt it represents, but the above $200 is accepted as payment in full, and is paid in lands deeded to my father, Shadrach Chilton, by Andrew J. McKinney.

"J. W. CHILTON."

And the deed itself reads "this deed is made in payment of a note given to J. M. Johnson and signed by A. J. McKinney." This recital was written in the deed by McKinney before he would agree to sign and acknowledge it.

McKinney testified as follows, in respect to the trade for the land:

"I will tell you about the way the trade was made. I gave Mr. Johnson the note; I bought a half interest in the drugstore, and gave him the note, and when it came due he had traded it to Mr. Chilton, and Mr. Chilton spoke to me about the note one day, and I told him I did not have the money to pay it, but I had a half interest in a piece of land, that I had traded Mr.

Johnson one-half interest in the land for a part payment on the drugstore at the start, but I would give him my half interest in the land for the note. We were three or four days trading, and at last he said he would do that, and he said then as Mr. Johnson owed him, or he had had a great deal of trouble with the doctor in getting some accounts collected, if I would let him take the note and sue on it he would dismiss as to me when it came into court, and he would get judgment. He claimed that Johnson owed him something near two hundred dollars, and he said that he would take a judgment of two hundred dollars due on the note and dismiss as to me, and I consulted with my attorney and I did not take the note up."

The defendant testified to the contrary, and as follows:

"When the note sued on became due, I called on McKinney to settle it or pay it, and he informed me that he would not do it; that he and Johnson had a settlement to make between them, and while he did not wish to purchase my interest in the note in any way, yet he wanted to get the note back into Johnson's hands so he could have a settlement with Johnson before he would do anything about it. Then I got Johnson and him together, and they could not agree to anything; they seemed to think that each owed the other. Afterwards I received a letter from McKinney stating that he had some land that he would put in on the note if I would take Johnson for the balance of it. He came to Winona to see about it, and I said I would take the land for what it was really worth, but I did not think it worth as much as two hundred dollars, but he insisted it was, and he said all he wanted was to be released from the note, that he had no further interest in it than to be released himself therefrom, that Johnson had not treated him right in their dealings, that Johnson owed him, that he would pay that much of it if I would look to Johnson for the balance of it. As I could not get

anything else I had to take the land, so I gave him the receipt that he has, but I told him at the time, that I expected to make the balance of the note if I could; that I did not consider it more than a payment of two hundred dollars, that after the suit was brought and judgment obtained, I would exhaust execution against Johnson. I informed him that, in a suit against him and Johnson, I could dismiss as to him and get judgment against Johnson. McKinney rather liked that, and stated that all he wanted was protection against the note."

Defendant further testified that he agreed to dismiss the suit as to McKinney for the reason McKinney told him he was insolvent and would schedule if an execution was issued against him.

Plaintiff resided in Birch Tree but was away on business (in Ripley county, Missouri) when the Shannon Circuit Court convened, and wrote his agent, J. M. Overcast, to look after the suit on the note and to employ L. B. Shuck, an attorney, and have the case continued to the next term; that he wanted to fight the suit and had a defense growing out of some of the accounts in the hands of Chilton for collection. Overcast was of the impression that an answer could be filed at any time within the first three days of the term of court and did not go to court until after a judgment had been rendered on the note. He saw Shuck and engaged him to defend the suit. Shuck examined the record and found that a judgment had already been entered and informed Overcast of the fact, and nothing more was done or said in respect to a defense to the suit. Plaintiff was entirely ignorant of the payment in full of the note, if it was paid in full, and of the alleged conspiracy between McKinney and defendant, until some months after the judgment was rendered against him. The circuit court found the issues for plaintiff and set aside the judgment. Defendant appealed.

BLAND, P. J. (after stating the facts).—The evidence shows that plaintiff was guilty of no laches in making the defense of payment to the note when sued thereon, for the fact of payment, if it is a fact, was known only to McKinney and defendant, both of whom concealed the facts from plaintiff and, as McKinney says, for the express purpose of enabling defendant to procure a judgment against plaintiff for an apparent balance due on the note. The only question in the case is one of veracity between McKinney and defendant. If McKinney spoke the truth, then the allegations of the petition are true and fraud entered into the very obtention of the judgment; for it was no less a fraud on the court and on the defendant for the plaintiff to present to the court a promissory note, on which there was apparently a balance due, as the evidence to establish his demand when he was conscious of the fact that the note had been fully paid and that the defendant had been purposely kept in ignorance of the fact of payment, than it would have been to offer any other evidence known by the plaintiff to be false for the purpose of procuring a judgment against defendant from whom and the court the falsity of the evidence was purposely concealed. Whether or not the note was actually paid and whether or not, if it was paid, there was a conspiracy between McKinney and defendant to use the note as evidence for the purpose of obtaining a fraudulent judgment against the plaintiff was known only to these two. In respect to both of these facts they squarely contradicted each other. The learned chancellor who heard them testify and who, to reach a conclusion, was compelled to find which of the two told the truth, found that McKinney was the truthful witness. There is nothing in the record to show that he was mistaken or erred in so finding, and we approve his finding and affirm the judgment.

All concur.